Good morning to all the judges. My name is Juan Manuel Torrontera. I represent the appellant in this case. I would like to reserve four minutes for review. You may. We bring this case on appeal for an opinion on order issued by the district judge dismissing the my client claim of age discrimination and retaliation under the ADA and under Puerto Rico at summary judgment stage. And specifically, I want to point out to the court the specific timeline, the specific issues of that timeline that I believe the court got wrong and did not establish the specific presumptions at summary judgment stage that the court had to do. Specifically, on February 18th, my client meets with Sandra Caro, co-defendant in this case. Sandra Caro is one of the managers of the hotel Villa Cofresi, the employer. My client is the head chef. In that meeting, they were alone. Both of them were alone in that meeting. In that meeting, my client's testimony in its deposition is that he was told by Ms. Sandra Caro, I believe that you are too old to work. You are slow. They say you are not capable of working at the line, meaning the kitchen line. You are old already. You are old to work at the line. Finally, she told him, you are not apt. That's February 18th. After that, on February 20th, my client meets with Fernando Caro, sibling of Ms. Sandra Caro and another manager of the hotel Villa Cofresi. And he meets with him in order to tell him what Sandra Caro told him in that meeting and that he thought those comments were discriminatory against him and that he wanted to meet with the entire Caro family. Owners of the hotel to discuss this issue. Fernando Caro tells him, I will get the meeting. February 21st passed. February 22nd passed. A new meeting was held. So, my client on February 25th goes to the Puerto Rico Department of Labor. He goes to the Office of Salaries and Regulations and there talks with the Puerto Rico Department of Labor officers and then he's referred by that office to the Puerto Rico Anti-Discrimination Unit. He goes to the Puerto Rico Anti-Discrimination Unit on February 25th afternoon. He doesn't file the charge because he lacks some information about the hotel that he needed to file the charge. So, he goes away. On February 28th, three days after that, a meeting is held with the entire Caro family and my client. In that meeting, my client once again brings to the attention of the entire management of the hotel the comments made by Ms. Sandra Caro during the February 18th meeting of him being all upslope. And during that meeting, he says, I think this is discriminatory and I'm humiliated by these comments. I want something to be done. I want to work, you know, without this pressure. During that meeting, at some point in time during that meeting, my client's testimony is that Ms. Sandra Caro brings to his attention that why, brings to his attention and specifically asking why did you go to the Department of Labor. So, there's testimony in the record that they knew that my client had gone to the Puerto Rico Department of Labor. My client admits in his deposition that he did not inform them that he had gone to the Puerto Rico Department of Labor, but he admits that during that meeting, Ms. Sandra Caro told him why did you go to the Puerto Rico Department of Labor. Now, so isn't, I mean, the adverse employment action here is your client's ultimate termination. That's what's at issue here. That's the ultimate, but he was suspended. I understand that. But I thought just perhaps to help focus you a little bit on what may be of concern to us. The district court seemed to take the view that it focused on the causation issue. It takes the view that your client, subsequent to some of these events that you described, conducted himself in a threatening, insubordinate manner, and it's that conduct that led to his termination. So, I think you have to address that causality question and explain why the district court did not address that in a way that's appropriate to the jury judgment procedure. The district court established that between the February 18th meeting and the termination, March 10th, okay, allegedly my client incurred insubordination and threatening at one of the managers of the hotel. However, the evidence that the court cites does not establish insubordination or threatening by my client to a hotel manager. The district court says that my client failed to deny those facts. But the evidence submitted by the defendants, in this case, to exhibit this exhibit, I will lead you to that right now, but it is the memorandum in which the defendants established the alleged cause of termination. In that own document, my client states that he is not in agreement with the statements made by the employer in that memorandum, and he pinpoints to the context and to the things that are said that were taken out of context. On the timeline that you have, I have us going up through February 28th. Yes. Termination is March 10th. March 10th. When is the alleged insubordination and threatening action to occur? Is that in our record, that we have a date? That's an issue because... In the record, is there any indication of what date that occurred on? From the memorandum, it says that it's after the February 20th meeting, okay. But is it after the February 28th meeting? No. When you say no, that's because we know it's not after the February 28th meeting? Yes, because the February 28th was the last day he worked, because when he returned on March 2nd, he was suspended, and he was suspended. So your contention is that the record would show that the insubordination and the threatening activity, which was the supposed non-protextual ground for termination, occurred prior to the February 28th meeting, at which you say the record will show that the employer made specific reference to him having brought the discrimination claim. Yes, yes. And on that basis, you say there's got to be a dispute of fact as to what the real basis for the termination was. What the motivation was. Okay. Apart from the AG's comments made 20 days before the termination by the decision-maker, and apart from the fact that none of this insubordination and threatening was brought forth to my client on the February 28th meeting. Now, just on this point, this all hinges on the February 18th statement by Carol that I – Is that the statement that the district court excluded, or does not? No, that's uncontroverted. Okay. The statements made by Sandra Carol to my client are not controverted. And the statement that was excluded occurred when? Okay. The statements that were excluded were stated by Mr. Hector Perez in summer 2009. So that's way earlier. Well, it would be within the timeframe of the charge. Right, but this is much later. This is 2010, February 2010. So this is, you think, the key period. Even if we decided we didn't have to look at that statement, you think this timeline from February to March itself is enough to buy summary judgment? Sure. I think that the comments made by Sandra Carol on February 18th are enough. However, I don't – I think that the court erred when dismissing the other statements. I will address our claim of discrimination. Okay. Now, there's another thing. There's an arbitrariness to the decision to terminate my client. Because it is suspended on March 2, 2010, March 2, 2010, because of insubordination and threats that allegedly happened between February 20 and February 28. However, he received on March 10 a termination letter stating that they have reviewed once again the issue and they think that a more definite disciplinary action is required. But there's no explanation in the record about why they think a more stringent disciplinary action is required. There's no explanation about it. If it was enough to suspend him, why now is it enough to terminate him? There's no reasonable explanation in the record. At that February 28th meeting, was there any reference in the record, the record evidence of that February 28th meeting? Does it reference his insubordination? No. My client's testimony during that meeting, the only issue that was discussed with him was the issue with respect to the discriminatory comments made by Sandra Carol. And is there conflicting testimony in the record on that point? I believe so, Your Honor. I believe so. Their awareness of his approach to the anti-discrimination, to the Department of Labor, the anti-discrimination unit in Puerto Rico, what does the record show about their awareness that he has taken those steps? Well, the record shows that Rita Caro, first of all, that he had told Evelyn, I forgot her last name, that is the human resources person in the hotel, he had told her he was going to go to the Puerto Rico Department of Labor. And in the meeting of the 28th, Rita Caro makes a statement, why did you have to go to the Puerto Rico Department of Labor? However, that's not the definition for the retaliation claim, because we have an oppositional issue from the oppositional standpoint that he met with Fernando Caro on the 20th and said, look, Sandra Caro's comments are discriminatory. And on the 28th, he once again opposes the issue. So we have both.  Right. And then the suspension is forthcoming with their awareness of this both oppositional and participation conduct, right? Sure. It's February 20th, February 28th, the suspension is March 2nd. So it is a close proximity, temporal proximity. Thank you. I'm sorry, one last. In terms of the claimed, I thought that he said something, like your client said something like go cook your own fish. That's the alleged allegation. That's one of the allegations of the subordination. And that's supposedly what occurred between February 20th and 28th. And is there anything in the record where your client contests him saying that? That's included in the memorandum. And the memorandum, the last part of the memorandum, my client states specifically, I do not agree with this memorandum because some of the conduct is taken out of context. Okay. So a jury would have to hear. What's the context? Well, that's the issue. There's a different type of context between what a witness will do, the tone of voice, how it was said, to whom, in what type of context. And that's for a jury to determine. It's my conclusion. Thank you. Good morning. Good morning, Your Honor. Please recall. Your Honor, this claim is based on age discrimination and retaliation. We submit first that there's no age discrimination, that there's no retaliation, and that defendant had a valid reason for plaintiff's dismissal. Now, this age discrimination issue is solely based on a February 18th meeting in which only plaintiff and defendant Sandra Carroll were present. That meeting was called to discuss plaintiff's performance and a prior incident with another employee, and that is in plaintiff's claim, Amendment 26 and 27 at page 10. So that meeting is called to discuss his performance, the incident that he had with other employees, and then he claims that in that meeting and only in that meeting, Sandra Carroll made some comments as to age discrimination. But how do we sustain that that is not true? There is a memorandum dated March 2nd, 2010, which is in the record, that states the problem that defendants were having with plaintiff. It says, you are creating a hostile environment with your negative attitude and the use of profane language in the workplace after being warned about this situation on several occasions. Now, Villa Cofresi, the hotel, is a hotel in the west coast of Puerto Rico in a small town, and it's a family-owned business. They don't have a lot of publicity, so they depend on how the clients recommend that hotel. So the performance of the employees is very, very important for the business as it's conducted by this family, which is now run by a second generation. In that same memorandum, it's also stated that he has threatened other employees, especially Director Perez, and the issue of insubordination. And allow me to quote from the memorandum, as I believe one of the judges asked. It says, insubordination. On Tuesday, February 23rd, having said to Sandra Calo over the phone, I don't have anything to talk with you when she told you that she needed to speak with you. Second, on February 26th, having said to Hector Perez, I'm doing the activities. I do not know anything about that. When he asked about the fish and when he said, if you need a fish, fill it yourself. Now, those are the facts that were presented in that memorandum. And that document is the only document that is signed by both plaintiff and defendant. And allow me to call your attention to what plaintiff said in that same memorandum when he wrote his opinion as to the memorandum. He said, I, Ariel Soto, do not agree with some of the things for which I'm being suspended. He doesn't say that he doesn't agree with all the things. He says, I don't agree with some. Why he doesn't agree with some, he goes on saying. But it's only because some comments in the manner which are said or written. He's not saying that he doesn't agree with them. He's saying that I don't agree the way it's written. He never said that the fact that he created a hostile environment is not true. He never said that he doesn't have a negative attitude. He never said that he never used profound language of the workplace. He never said that it was not true that he has been warned several times about the same situation. He never said that it's not true that he has threatened Hector Caro, a fellow employee. And he never denied the insubordination charge. But more important, in that same document, he doesn't say, listen, all that you're saying is not true because the truth is that you are discriminating against me because of my age. In that document, he doesn't mention at all the allegations of age discrimination. Now, for us, that presents two things. First, that it's not true that such an allegation of age discrimination occurred in that February 18th meeting. And second, that defendant had valid reasons for plaintiff dismissal. Could you talk about that February 28th meeting that he just was, that counsel was just referring to? He says that at the February 28th meeting, reference was made, the record shows, I'm sure you don't agree with it, but the record shows that your client, or Senator Caro, said that she was aware of him having made actions towards bringing a discrimination claim. And second, that the record will also show that at that meeting, at least there is some testimony that no reference was made to his insubordination at that February 28th meeting, which post-dates the incidents you're describing. Could you just comment on that? Yes, Your Honor. That record is limited to plaintiff's testimony. He's saying that the record will show that at the February 28th meeting, following the incidents of insubordination, at which the record will show that the plaintiff contends he was told at that time that he moved to file a discrimination claim, and that no reference was made to his insubordination. And then the next act we have is the termination. Your Honor, not exactly that way, if you will allow me. Plaintiff states that there was a meeting on February 25th in which he goes to the Labor Department. Now, he says, Plaintiff went to the Puerto Rico Anti-Discrimination Unit to receive orientation. And let me stress that. He says to receive orientation as to his rights as an employee. Plaintiff also received orientation at the Office of Salary and Regulation of the Puerto Rico Department of Labor. Those are his allegations of the complaint. Now, he says, in the Puerto Rico Anti-Discrimination Unit, Plaintiff was advised to prepare a letter in which he explained all the incidents he felt were discriminatory and to deliver the letter to his employer. Your Honor, we have dealt, I don't know, with how many cases of discrimination, and that never happens. When you go to the Discrimination Unit to file a claim to say they are being discriminated against me, they will give you a form in which you fill out that form, and that's the charge. They never, at least as long as I've been a lawyer and I have handled quite a number of cases, they never say, well, don't file anything here, just write a letter. Counsel, you sound like you're testifying at this point. No, boy, Your Honor, you're correct. I'm sorry. But I'm saying what my feeling is. But the fact still remains in the next affirmative, Your Honor. It says, Plaintiff drafted the letter and had planned to hand it in the same on March 1st, 2010. Your Honor, that draft has never been presented. That draft is not in evidence. As far as I'm concerned, I have never seen that draft and it has never been presented by Plaintiff as to that draft in fact did exist. But it calls our attention what they say next. Not in the claim, because those are three allegations are in the claim, but in the brief. In the brief they say at page 14 and 15, they said, and that's a different story, that on February 25th, 2010, he went to the Puerto Rican Discrimination Unit for an orientation and to file a grievance. In the complaint, it is never said that he did in fact went to file a grievance. And, as Brother Counsel said, because he lacked certain information about the hotel, he was not able to file the grievance. Your Honors, in that grievance, the only thing that is asked about the employer is the name and the address. Mr. Soto had been working there, if I recall correctly, for about seven years. There is no way he could have known the name and the address of his employer. It sounds to me like I'm hearing a lot of facts that are in dispute. Well, we are presenting, Your Honor, not facts that are in dispute, but facts that they presented in some way in the claim, and they are presented in another way in the brief. Well, I don't know. It seems to me like this is not a case for summary judgment. It seems to me that judge may engage in credibility findings, which he wasn't supposed to. Yes, Your Honor, but that will be limited to the fact, the allegation, as to if a discrimination did occur and if a retaliation did occur. Because there is no way a retaliation can occur if, in fact, the letter of dismissal was dated March 10 and the filing of the charge is dated March 11. Now, the only way they can bypass the fact that the retaliation charge will file the day after the dismissal is by bringing this February 25, 2010. And another thing, Your Honor, never an attendance record as to that Mr. Soto, in fact, did when. This is not the district court's theory of why there should be summary judgment, right? No, Your Honor.  Yes, Your Honor. Okay, the only ground they gave was that there was a non-pretextual reason based on insubordination. Right. Okay, and on that score, as I understand it, there seems to be a dispute in the record about whether this February 28 meeting did or did not happen. You say it didn't happen the way that Plano says it happened, right? Right, Your Honor. He says it did happen that way, right? Yes, Your Honor. And both of you agree, though, that that meeting occurred after the insubordination occurred, correct? We both agree, yes, because the insubordination, as I read to you, Your Honor, occurred on 23rd and the 26th. 23rd and 26th. So if this meeting happened on the 28th the way Plano said, there would at least be evidence in the record to suggest that the concern on the employer's mind at that moment was not the insubordination but the bringing of the discrimination charge. Yes, Your Honor, but So that's what I think is my concern, that that then suggests there's a dispute in the evidence on the record as to what the true motivation for the dismissal was. Yes, Your Honor, but we present and we sustain, as we lead the complaint, that there's no allegation as to that defendants, the managers, the owners, ever knew that Mr. Soto did, in fact, went to the Department of Labor or to the Anti-Discrimination Unit. Except for the evidence in the record of what he says happened on the 28th meeting. Yes, Your Honor, but those are allegations. Yes. You say we shouldn't believe them. Yes, but Because they're incredible, right? They're too incredible to believe. Not only that they are incredible, they are not in the claim. Those are not allegations presented to the court in the claim. Those are allegations. We have to rely on his complaint in order to Pardon me, Your Honor. Are you suggesting that because that is not an allegation in the complaint, it doesn't count for purposes of evaluating whether he should survive summary judgment? That's simply not right. But, Your Honor, what we are presenting is that if we present a motion for summary judgment and we allege, listen, there is no evidence that defendants knew about you filing, not only filing, because they didn't file anything, that you went to the Department of Labor, then they come with these allegations that they don't have no document. They could have gone to the Department of Labor to present an attendance record. They could have requested an affidavit from the person that interviewed them and said, yes, in fact, that person was here. They could have a certification from the agency stating, yes, this person was here, and we gave him this orientation. So you think that the person bringing the discriminations claim testimony as to the discriminatory conduct that was done to them can't count for surviving a summary judgment motion? No, Your Honor. What we say is that that testimony does count, do count, but when you question that testimony and you bring the fact that there were valid reasons for the dismissal, and when you weigh both things, that there were valid reasons for the dismissal, well, you have to bring the whole, as the district court did, there were valid reasons for the dismissal and the allegations are really questionable. Can I ask one last question? Sure, Your Honor. What is the evidence you refer to as threat? What does the record show about the nature of that threat? Your Honor, the only thing that the record shows are what I just read to you. So it's just a general statement that he made a threatening comment. We don't know the content of that threat. Yes. The only evidence in record are these two allegations and the fact that in that same document he was not denying those arguments. Thank you. Thank you, Your Honor. This is Attorney Romero-Frontera. Just a few points. We bring to the attention of the court, in the opinion and order at page 25 of the addendum, footnote 2, the court states, to the extent the defendant did not file a reply statement of material facts, the court shall also deem as admitted all of plaintiff's proposed statement of facts that were supported by the record citations. So we invite the court to review our reply statement of material facts that were not in controversy, that defendants failed to oppose to, and that the court deem admitted. In those specific facts, it is presented the timeline that I've just argued from February 18th to March 10th without defendants opposing them. So the court deem admitted those facts and those issues for purpose of a summary judgment. Second, I think that the argument of defendants and the court with respect to the sufficiency of the pleadings is something that this court must address. I understand that the court can reverse the summary judgment without entering into those issues, but it's an issue that is coming again and again for plaintiff in the district court where it says if you need to acknowledge the specific facts in the complaint, you're fleshing out a new claim in summary judgment, and that is not true. These are two different issues. And this court has issued opinion and order after opinion and order, establishing that you don't have to state a prima facie case in your complaint. You don't have to include all the specific facts, you know, because the record is set. Are you suggesting that there is something in our opinions that has created uncertainty? No. I think the opinions are very clear, but the courts in this district court would like us to say it again. Because in Rodriguez-Vives versus Puerto Rico Firefighters, Garayal de Rivas versus Puerto Rico Municipalities of Carolina, Morales, this court has stated. But the district court in this case, based on the decision of Fleming, established with the issue of the statement made by Rector Perez that because we didn't mention those statements in the pleadings, he stroked them from the record. And this was something that was developed during the story while my client was being proposed by the defendants. In questions from the defendants, my client said, because they asked my client, did anyone else from Ms. Sandra Caro make any discriminatory comments? And my client said, well, yes, Hector Perez. So when they filed a motion for superintendent judgment, they knew about that. It's not a surprise. It is not something that comes in our opposition with a statement of under penalty of perjury by our clients. It's something that the defendants knew throughout the story. It's not a surprise. And it's not a fleshing out of a new claim at summary judgment stage. With that, if the court does not have any further questions, I will submit my case. Thank you.